Mabio Pittoni, J.
A subcontractor has brought this action to foreclose a mechanic’s lien. The defendant, A & B Home Improvement Corp. (hereafter called the contractor), was the general contractor for the remodelling of a house owned by the defendant, Hyman Artz (hereafter called the owner). The subcontractor now moves for an order granting leave to Hyman *266 Artz, the owner of the property, upon payment to the plaintiff subcontractor of the full amount of the judgment entered by the contractor ag’ainst owner Artz on January 11, 1960, to have that judgment cancelled, and to have the plaintiff subcontractor’s mechanic’s lien vacated and cancelled.
On April 20, 1959 the subcontractor filed a mechanic’s lien against the owner in the amount of $1,081.91 for materials furnished. Subsequently, the subcontractor sued the defendant contractor, and recovered a judgment in the same sum.
On May 22,1959 the contractor sued the owner, and on January 11, 1960 obtained a judgment in the amount of $1,008.24. Although the owner and contractor agreed to settle this judgment for $950, the compromise was never consummated.
On March 27,1959 and on June 5,1959 the Government levied tax assessments against the contractor in the sums of $720.51 and $310.90, respectively. These assessments were never filed in Nassau County, but were recorded in New York and Queens Counties, and with the owner and his attorney between September 24 and March 17, 1959.
By order dated July 28, 1960, Mr. Justice Beennajst denied a motion to add the Treasury Department as a party defendant and to permit the owner to pay the judgment owing to the contractor into court. Denial of permission to pay the obligation due the contractor into court was predicated on the fact that settlement of the judgment for $950 was never effectuated and that this judgment did not bind the subcontractor, whose lien and judgment is for $1,081.96.
On this motion, the subcontractor and owner again seek to pay the $950 into court on condition that the subcontractor’s lien and the contractor’s judgment be cancelled. The attorney for the contractor asserts the priority of his lien attaching to the judgment procured by his services, and the Government asserts the priority of its tax lien.
Section 475 of the Judiciary Law provides that “ From the commencement of an action * * * the attorney who appears for a party has a lien upon his client’s cause of action, * * * which attaches to a * * * judgment * * * in his client’s favor, and the proceeds thereof in whatever hands they may come ’ ’. It is to be noted that the statutory lien attaches to the judgment from the date of commencement of the action (Matter of City of New York [Coblentz], 5 N Y 2d 300, 307; cert, denied sub nom. United States v. Coblentz, 363 U. S. 841), which in this instance is May 22, 1959. The lien of the subcontractor, however, had been filed one month earlier, April 20, 1959, and takes precedence.
*267 Section 36-a (now § 70) of the Lien Law, applicable to private improvements, declares that funds received by a contractor from an owner are trust funds to be applied first to the payment of subcontractors. For the purpose of civil action only, the trust funds include the right of action upon an obligation for moneys due. (Lien Law, § 36-a, now § 70.) When the action in behalf of the contractor was begun, its attorney did so with knowledge of the subcontractor’s prior filed lien. He thereby assumed the risk that his attorney’s lien could be nullified, since any moneys recovered were first subject to the payment of subcontractors. Here that risk became a reality.
Although the attorney’s retainer is dated prior to the time that the subcontractor’s lien was filed, that fact is of no help to him in this case. The retainer provides: “ You hereby agree to pay me, and you authorize me to retain out of any moneys that may come into my hands, 50% of any sums received or recovered by you ’ ’. The language of the retainer contract speaks of a future transfer of money to the attorney, at a subsequent time upon receipt of funds. The retainer does not purport to vest a present or immediate assignment, effective on the date of the making of the contract (cf. Matter of City of New York [Coblentz], 5 N Y 2d 300, 307, supra). Consequently, the retainer is not sufficient to defeat the priority of the subcontractor’s lien. Nor does the derivative nature of a subcontractor’s lien affect its status. A subcontractor’s rights as lienor are measured by the rights of the general contractor only in the sense that he cannot recover more than is due the contractor from the owner. (Lien Law, § 4; Lorber v. Eskof Real Estate, 21 Misc 2d 308, 310-311 and cases cited.)
Turning to the Government’s tax lien, this court, at the outset, is faced with a challenge directed to its jurisdiction. The Government appears specially (Civ. Prac. Act, § 237-a), and states that because it was not made a party to the action or served with process herein, this court is without jurisdiction to determine its rights. This self-same contention was made and rejected by the court in Matter of City of New York (Coblentz) (5 N Y 2d 300, 309-310, supra). The Court of Appeals therein said: ‘ ‘ This is not a situation in which the Government ismast in the role of a defendant being sued without its consent but, rather, that of a claimant to disputed funds. In intervening for the purpose of presenting its claim, the United States is an actor—voluntarily asserting a claimed right—and is not a defendant. In so acting, the Government suffers no impairment of its sovereignty by prosecuting such a claim in the appropriate forum where the funds are held”.
*268 The question of priority of the conflicting liens asserted to the fund payable by the owner presents a difficult problem. There are two fundamental statutory rules involved: liens against real property must be filed in the County Clerk’s office where the property is situated (Lien Law, § 240, subd. 1); and liens against personal property need only be filed in the office of the Town or City Clerk where the owner has an office (Lien Law, § 240, subd. 2).
The most recent case on the subject is Aquilino v. United States (3 N Y 2d 511, [revd.] 363 U. S. 509). In that case, the owner of real property deposited into court the amount due to the insolvent general contractor-taxpayer. Unpaid subcontractors had filed mechanics’ liens a few days after the Government filed its tax lien in the office of the City Clerk where the taxpayer-contractor resided. The Court of Appeals in the Aquilino case (3 N Y 2d 511) gave preference to the Government lien on the theory that the debt owing to the general contractor from the owner constituted ‘ ‘ property and right to property ” belonging to the contractor-taxpayer under the Internal Bevenue Code (U. S. Code, tit. 26, § 3670, now § 6321 et seq.). The Court of Appeals, therefore, held it immaterial that the Government lien had not been filed in the County Clerk’s office since the lien was only asserted against personalty. Basically, the Court of Appeals determined that Federal law and not State law controls as to what constitutes “ property or rights in property ” of a taxpayer. On appeal to the United States Supreme Court (363 U. S. 509) that court held that State law controls in determining the nature of the legal interest which the taxpayer had in the property (accord, United States v. Durham Lbr. Co., 363 U. S. 522). It, therefore, remanded the case to the Court of Appeals for its determination of what rights or property a general contractor possessed to moneys or an obligation owing from an owner of property and stemming from an improvement to reality where subcontractors asserted a lien for payments still due to them. Without the benefit of a Court of Appeals decision thereon, this court must answer the same problem.
This court is inclined to follow the rationale of the Appellate Division holding in the Aquilino case (2 A D 2d 747), viz., that there is no debt due from the owner to the general contractor to which the Government’s lien could attach. When the plaintiff subcontractor furnished materials for the improvement of the owner’s property, it thus enhanced its value and thereby acquired an interest therein to the extent of the materials furnished; and by filing its notice of lien, perfected its inchoate *269 right to such interest. (2 A D 2d 748 and cases cited). Having commenced.an action to enforce its lien, the subcontractor is entitled to judgment thereon pursuant to section 56 of the Lien Law, which provides for payment to the lienor out of the proceeds of the sale of real property before payment of any part of the proceeds to the person (general contractor, A & B) for whom the lienor (subcontractor) furnished the materials.
If the owner deposits the money owing into court, such funds stand as a substitute for the real property and must be distributed by the judgment in the same manner as if the money or funds were proceeds realized on a sale (cf. Sayville Fed. Sav. & Loan Assn. v. Schons, 17 Misc 2d 54). The Government here had no lien against the real property involved since it never filed its lien in the County Clerk’s office in Nassau (Lien Law, § 240, subd. 1). Consequently, the Government would have no lien to any funds deposited in substitution therefor.
Since the subcontractor is the moving party, together with the owner (Artz), the court assumes that the subcontractor thereby consents that the amount of its lien (which is greater than the judgment owing by the owner to the contractor, A & B) shall be controlled by the former. In any event, the subcontractor cannot recover from the owner more than is due to the contractor (Lien Law, § 4). This court, however, cannot permit payment into court of an amount less than the actual judgment held by the contractor, since the settlement of that judgment with the owner Artz for $950 was not in fact accomplished.
Accordingly, this motion is granted to the extent that the defendant, Hyman Artz, is permitted to deposit into court the full amount of the judgment owing to the defendant, A & B, with interest thereon, on condition that the judgment held by A & B, and the lien filed by the plaintiff subcontractor against the property of Artz, be cancelled. The plaintiff’s judgment against the defendant, A & B, will be accordingly reduced. Following the deposit, the plaintiff subcontractor may proceed with his motion for summary judgment in accordance with the decision herein, and may enforce the same, if granted, against the funds on deposit. Settle order on notice.